STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.   FM-97-042

PRESTON DALGLISH,

    Plaintiff

v.

**ORDER**

JANE GRIFFIN,

    Defendant

Pending is Ms. Griffin's Motion for Contempt to Enforce Child Support and Dr. Dalglish's Cross-Motion for Support.   Following hearing, both Motions are Denied.

The parties were divorced in 1998.   They entered into a settlement agreement which required Dr. Dalglish to pay child support of $481.00/week for the three children, which would be reduced as each child reached age eighteen.   The agreement also provided for spousal support for Ms. Griffin until July, 2011.   Dr. Dalglish paid the required child support until January, 2002, when he stopped payments.   In July, 2010 Ms. Griffin filed a Motion for Contempt to Enforce Child Support payments which had grown to more than $100,000.

The settlement agreement called for shared parental rights and shared primary residence.   At the time of the divorce, Ms. Griffin was struggling with substance abuse issues.   The settlement agreement contemplated that there may be periods when Ms. Griffin would be unavailable to care for the children:

> This child support payment is, however, suspended and of no force or effect while Preston provides a nanny for the children's care and Jane is living in a treatment arrangement.   When Jane completes her treatment

and finds a suitable residence for her and the children currently assumed on or by October of 1998, child support shall commence the following month on or about November 1, 1998 and continue each month thereafter.

It appears Ms. Griffin undertook a treatment program following the divorce in 1998 and the parties resumed a shared residency arrangement, with Dr. Dalglish paying the child support obligation until early 2002.

Ms. Griffin's substance abuse issue became more acute in early 2002. She was convicted of Operating Under the Influence and served a short period of incarceration. She also engaged in two 28-day in-patient rehabilitation programs. During this period, Trevor, the remaining minor child, stayed with Mr. Dalglish on a nearly continuous basis.

In the fall of 2003 Trevor was enrolled in a boarding school, where he continued until graduation in May, 2007. During school vacations and the summer recess Trevor would spend time with both parents. By this time Ms. Griffin had moved from Kennebunk to So. Bristol.

From January, 2002 until Trevor reached age eighteen Dr. Dalglish did not pay any child support to Ms. Griffin. However, he did pay all the expenses associated with Trevor's schooling and Trevor spent the majority of his vacation and recess time with Dr. Dalglish.

Between November of 1999 and May of 2005 each party brought motions to amend or enforce the divorce judgment with respect to the allocation of parental rights. A Guardian Ad Litem was appointed who worked with the parties to resolve these issues and the motions were dismissed without hearing. In the earlier motions, Ms. Griffin did not seek enforcement of the child support obligation and Dr. Dalglish did not move to modify that obligation. Ms. Griffin first raised the issue of child support in July, 2010.

2

Dr. Dalglish asserts three affirmative defenses in opposition to the Motion: waiver, laches and equitable estoppel. Ms. Griffin responds that these defenses are disfavored in cases involving child support payments, and, in any event, the evidence does not support Dr. Dalglish's position.

As a general principle, defenses of the type raised by Dr. Dalglish are disfavored under Maine law. The proper remedy for one seeking relief from a child support order is a motion to amend. Self help measures or side agreements between the parties should be discouraged. However, in appropriate cases these defenses may apply. *Dept. of Human Services v. Pelletier*, 2009 ME 11, 964 A.2d 630.

"Waiver is the voluntary and knowing relinquishment of a right and may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon" *Dept. of Human Services v. Bell*, 1998 ME 123 ¶6, 711 A.2d 1292. I find and conclude that Ms. Griffin has waived her right to seek child support arrearages. While there is no evidence that Ms. Griffin explicitly waived these rights, nevertheless, both parties brought post-judgment motions, Ms. Griffin's in 2005, three years after child support payments ceased, and the issue of support was not raised. Further, from 2002 to 2007, Trevor is either at boarding school or staying primarily with Dr. Dalglish. Under these circumstances, Dr. Dalglish could reasonably infer that Ms. Griffin had relinquished her right to child support.

Equitable estoppel arises when one person's statements or conduct induces another party to act; reliance on the statement or conduct proves detrimental and the reliance was reasonable. Reliance can be based on silence. Equitable estoppel requires proof of a misrepresentation, which may arise by conduct or silence as well as affirmative statements. I find and conclude that Dr. Dalglish has proven the defense of

3

equitable estoppel by clear and satisfactory evidence. The divorce judgment contemplated that Ms. Griffin might be unable to properly care for the children because of her struggle with substance abuse. In early 2002 she had a serious relapse resulting in incarceration and in-patient treatment. It was at this point that Trevor came to live with Dr. Dalglish on a nearly continuous basis except when he was away at boarding school. The divorce judgment explicitly "suspended" support payments while Ms. Griffin was seeking treatment. Until Trevor graduated from high school he lived primarily with Dr. Dalglish or was away at school. This represents conduct on Ms. Griffin's part which induced Dr. Dalglish to act to his detriment in reasonable reliance on the terms of the settlement agreement, which suspended the child support obligation. Ms. Griffin's failure to raise the support issue in conjunction with her other post-judgment motions amounts to misrepresentation through silence.

Laches may preclude a claim when "the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right." *Glew v. Glew*, 1999 ME 114 ¶13, 734 A.2d 676. Here, the child support payments stopped in January, 2002, at least arguably under the provision which "suspended" them. No enforcement action was initiated until 2010, eight years after the payments stopped and three years after Trevor graduated from high school. Throughout this whole period, Dr. Dalglish supported Trevor by himself. During this period several post-judgment motions were filed but the issue of child support was not raised. I find and conclude that Dr. Dalglish has established the defense of laches as against Ms. Griffin's claim.

4

I acknowledge that good practice would suggest that Dr. Dalglish should have filed a motion to amend the child support order, but, for the reasons stated above, it would be inequitable to enforce that order now.

The entries will be as follows:

Ms. Griffin's Motion for Contempt and to Enforce Child Support is Denied.

Mr. Dalglish's Cross-Motion for Support is Denied.

The clerk may incorporate this order in the docket by reference.

Dated:        January 11, 2012

G. Arthur Brennan
Justice, Superior Court, Active Retired

ATTORNEY FOR PLAINTIFF:

DANA E PRESCOTT ESQ
PRESCOTT JAMIESON NELSON & MURPHY
PO BOX 1190
SACO ME   04072-1190

ATTORNEY FOR DEFENDANT:

PHILIP COHEN ESQ
PO BOX 1
WALDOBORO ME   04572

5