ENTERED NOV 0 3 2014

STATE OF MAINE
CUMBERLAND, ss

EAST SHORE BEACH
CONDOMINIUM ASSOCIATION,

Plaintiff,

v.

STEVEN R. EDDLESTON and
DANIEL MOSELEY,

Defendants.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-473

4/18/2014

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

Both parties have filed motions for summary judgment on the plaintiff's complaint and the defendants' counterclaim. For the following reasons, both motions are denied.

### Background

East Shore Beach Condominium Association is comprised of 24 units located in Naples, Maine. (Defs.' Supp. S.M.F. ¶¶ 1-2.) Units 1-15 are housed within three buildings, and units 16-24 are each freestanding units, similar to single-family homes. (Defs.' Supp. S.M.F. ¶ 2.) The Association's governing document is the Declaration of Condominium, which may only be amended pursuant to certain specified procedures. (Defs.' Supp. S.M.F. ¶ 1; Pl.'s Add. S.M.F. ¶ 1.) In 1999, Marge and Jim Lanoix owned one of the freestanding units and asked the Association for permission to expand their unit. (Defs.' Supp. S.M.F. ¶ 3.) Under the Association's Declaration, the Lanoix request required the approval of all 24 of the unit owners. (Defs.' Supp. S.M.F. ¶ 4.) At the May 28, 2000 annual meeting of the Association, the Lanoix proposal was rejected by a

STATE OF MAINE
Cumberland, ss, Clerk's Office

APR 18 2014

RECEIVED

vote of 22 in favor and 1 against of the 23 owners present. (Defs.' Supp. S.M.F. ¶ 4.)

On August 4, 2000, Vin and Sharon Indorato, owners of Unit 18, revived the Lanoix request and presented the renewed request at a Special Meeting of the Association held on September 3, 2000. (Defs.' Supp. S.M.F. ¶ 5.) The parties have very different characterizations of the actions that took place at the September 3, 2000 meeting.

According to defendant Steve Eddleston, who was on the Association's Executive Board at the time, the unit owners eventually approved the Indorato amendment to the Condominium Declaration ("the Declaration"). (Defs.' Supp. ¶¶ 6-7.) The amendment allowed the owners of the freestanding units to expand, provided they met two conditions: (1) all owners of the freestanding units had to agree on a single design for expansions, and (2) the Association's Executive Board had to approve the expansion plans. (Defs.' Supp. S.M.F. ¶ 6.)

According to plaintiff, the Indorato proposal "was, essentially, a resolve or expression of openness to the idea of permitting additions to the free-standing units, but it was not an amendment to the declaration." (Pl.'s Opp. S.M.F. ¶ 6.) Because there was no actual text amendment to the Declaration introduced, plaintiffs claim that none of the owners believed that they had amended the Declaration at the September 2000 meeting. (Pl.'s Opp. S.M.F. ¶ 6.) The crux of the case is whether the September 3, 2000 vote by the Association's members was a valid approval of an amendment to the Declaration.

The parties agree that Association members unanimously approved the meeting minutes of the September 3, 2000 meeting at their annual meeting on May 26, 2001. (Defs.' Supp. S.M.F. ¶ 7.) In 2003, the Executive Board created a

2

new collection of Standards for the Association, which included a section called "Addition to Free-Standing Units." (Defs.' Supp. S.M.F. ¶ 9.) Under this section, additions could be built on the back of the units' garages, subject to Board approval. (Defs.' Supp. S.M.F. ¶ 9.) These Standards were distributed to the Association's members at the 2003 Annual Meeting and have been on the Association's website since that date. (Defs.' Supp. S.M.F. ¶ 10.)

Defendants claim that at least two prospective purchasers of the freestanding units, including defendant Daniel Moseley, relied on the Association's representations about the 2000 amendment in purchasing the units. (Defs.' Supp. S.M.F. ¶ 12.) Plaintiff denies that any prospective buyers were told about the amendment. (Pl.'s Opp. S.M.F. ¶ 12.)

In May 2012, Eddleston was president of the Association and Moseley was Secretary. (Defs.' Supp. S.M.F. ¶ 14.) At the annual meeting on May 27, 2012, the Board, including both defendants, became aware that the 2000 Proposal was never recorded in the Registry of Deeds as required by 33 M.R.S. § 1602-117(3) of the Maine Condominium Act. (Defs.' Supp. S.M.F. ¶ 15.) The Board hired an attorney to prepare a revision of the 2000 Proposal before it was recorded. (Defs.' Supp. S.M.F. ¶ 16.)

The Board held meetings in August 2012 to discuss the new proposal to amend the Declaration, and a meeting was scheduled for September 3, 2012 to allow Association members to vote on the changes. (Defs.' Supp. S.M.F. ¶¶ 17-18.) According to plaintiffs, Association members strongly objected to the new proposed amendment. (Pl.'s Opp. S.M.F. ¶ 19.) A member of the Board delayed the September 3, 2012 vote, and other members circulated a petition, signed by two-thirds of Association members, calling for the removal of Eddleston and

3

Moseley as members of the Board. (Defs.' Supp. S.M.F. ¶ 19; Pl.'s Opp. S.M.F. ¶ 19.)

Eddleston and Moseley consulted an attorney and recorded a certificate in the Registry of Deeds documenting the 2000 proposal on September 21, 2012. (Defs.' Supp. S.M.F. ¶¶ 21-22.) Plaintiff argues that the defendants' former attorney had already advised them that the Declaration was not amended in 2000. (Pl.'s Opp. S.M.F. ¶ 21.) Even the defendants' current attorney stated that someone could challenge the validity of the amendment. (Pl.'s Opp. S.M.F. ¶ 21.)

Shortly after filing the certificate, the two defendants resigned as officers of the Board. (Defs.' Supp. S.M.F. ¶ 23.) On October 5, 2012, the Association's new president and secretary filed an affidavit in the Registry of Deeds contesting the validity of the certificate. (Defs.' Supp. S.M.F. ¶ 24.)

## Procedural History

On November 16, 2012, the Association filed their two-count complaint against Eddleston and Moseley. In Count I, plaintiff seeks declaratory judgment that the certificate recorded by defendants is invalid and that defendants breached their fiduciary duties to the Association when they recorded it. The parties agreed to dismiss count II of the complaint. The defendants filed a motion to dismiss on December 14, 2012, which was denied by the Court on May 30, 2013. Thereafter, defendants filed an answer and a counterclaim, seeking indemnification based on the Declaration and the Maine Nonprofit Corporation Act. Defendants filed a motion for summary judgment on August 30, 2013; plaintiff opposed the motion and filed a cross-motion for summary judgment.

4

1. Standard of Review

"Summary judgment is appropriate when there is no genuine issue of material fact that is in dispute and, at trial, the parties would be entitled to judgment as a matter of law." *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 9, 983 A.2d 382. "An issue is genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the differing versions; an issue is material if it could potentially affect the outcome of the matter." *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 10, 956 A.2d 104.

2. Statements of Material Fact

The parties have made this case unnecessarily complicated because of the way they have filed their statements of material fact. Under Rule 56,

> A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried. Each fact asserted in the statement shall be set forth in a separately numbered paragraph and shall be supported by a record citation . . . ."

M.R. Civ. P. 56(h)(1). "A court need not consider additional facts when . . . they are improperly commingled in the nonmoving party's paragraphs responding to the moving party's material facts." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 11, 824 A.2d 48.

Plaintiff filed its opposing statements of material fact, which it also intended to serve as its statements of material fact for the purposes of its cross-motion for summary judgment. Plaintiff also filed some additional statements of material fact. Defendants only replied to the additional statements of material fact, as if there was no cross-motion. In addition, some of plaintiff's statements of

5

material fact span multiple pages. (*See* Pl.'s Opp. S.M.F. ¶¶ 6, 16.) These multi-paragraph responses do not allow for a direct reply admitting, denying, or qualifying the facts. The Court will not consider plaintiff's opposing facts as supporting facts for its cross-motion; it will consider the opposing facts for the purposes of defendants' motion for summary judgment.

3. 2000 Proposal

Under Section 8(a) of the Declaration, the Declaration may be amended "only in accordance with the Procedures specified in Section 1602-117 of the [Condominium] Act and [the] Declaration." Altering the boundaries of any unit in the Association requires the consent of all unit owners. (Defs.' Supp. S.M.F. ¶ 4; Eddleston Aff., Ex. 2.) Thus, the parties do not dispute that all of the owners in the Association were required to approve an amendment to the Declaration. The issue is whether that approval was in fact obtained at the September 3, 2000 meeting.

According to defendants, the amendment was approved. (Defs.' Supp. S.M.F. ¶ 6.) According to plaintiff, there was never a formal vote to amend the Declaration because there was no text of the amendment before the Association's members. (Pl.'s Opp. S.M.F. ¶ 6.) Given these competing descriptions, there is a genuine issue of material fact regarding whether the Association's members properly approved the 2000 proposal.

4. Joinder

Defendants argue that plaintiff's complaint should be dismissed because plaintiff failed to join indispensable parties, specifically the other unit owners in the Association. M.R. Civ. P. 19(a). Defendants raised this same argument in their

6

motion to dismiss. Although the Court did not specifically address the joinder issue, the motion to dismiss was denied.

Under Maine's Condominium Act, the Association is empowered to sue on behalf of individual unit owners. 33 M.R.S. § 1603-102(a)(4) (2013). Thus, the other unit owners are represented in this suit. If the unit owners do not agree with the way the Association is handling the case, they can vote for a new Executive Board and change course. Alternatively, they could intervene.

5. Waiver/Estoppel

Defendants argue that the Association either waived or should be estopped from asserting its claim in this case. They argue that the amendment was approved in 2000, the minutes of the meeting where the amendment was approved were adopted, rules were adopted based on the amendment, and that prospective purchasers were told about the amendment. Thus, they argue that the Association treated the amendment as valid for over 12 years.

Plaintiff counters that nobody actually believed that the vote in September 2000 was amending the Declaration. Thus, none of the unit owners would have any reason to scrutinize the minutes from that meeting or analyze any of the rules that were passed by the Executive Board regarding additions. Moreover, they dispute whether prospective buyers were told about the "2000 amendment."

"Waiver is the voluntary and knowing relinquishment of a right and may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon." *Dep't of Health and Human Servs. v. Pelletier*, 2009 ME 11, ¶ 16, 964 A.2d 630 (quoting *Dep't of Human Servs. v. Bell*, 1998 ME

7

123, ¶ 6, 711 A.2d 1292). "Equitable estoppel precludes a party 'from asserting rights which might perhaps have otherwise existed, . . . against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right.'" *Id.* at ¶ 17 (quoting *Waterville Homes, Inc., v. Maine Dep't of Transp.*, 589 A.2d 455, 457 (Me. 1991). The parties' competing factual descriptions demonstrate that there is a genuine issue of material fact as to whether the Association waived or is estopped from challenging the amendment.

6. Immunity

Defendants also argue that they are entitled to summary judgment on plaintiff's complaint because they were acting in their capacity as Executive Board members when they recorded the 2000 amendment. Section 12(a)(ii) of the Declaration provides:

> The members of the Executive Board . . . [s]hall not be liable to the Unit Owners as a result of the performance of the Executive Board members' duties, for any mistake of judgment, negligent or otherwise, except for the Executive Board members' own willful misconduct or gross negligence.

The Maine Nonprofit Corporation Act similarly states that an officer of a corporation is not liable to the corporation if the officer acted in "good faith." 13-B M.R.S. § 720 (2013).

Plaintiff alleges that Moseley and Eddleston were specifically advised by their former attorney that there was not an effective amendment in 2000. (Pl.'s Opp. ¶ 21.) Acting on this advice, defendants attempted to have the Association's members vote on new amendments that would allow for additions to the freestanding units. When that plan failed, they filed the certificate in the Registry of Deeds despite their knowledge that it was not an effective

8

amendment. (Pl.'s Opp. ¶ 20.) These facts could support a finding that defendants engaged in willful misconduct or gross negligence.

According to defendants, they were acting in good faith to perfect the amendment that they believed was validly adopted in 2000. (Defs.' Supp. S.M.F. ¶ 33.) Accordingly, there is a genuine issue of material fact regarding whether defendants are entitled to immunity.

7. Counterclaim for Legal Fees

Defendants are entitled to costs and fees only if they did not engage in willful misconduct or gross negligence. As discussed above there is a question of material fact on this issue.

The entry is:

Defendants' motion for summary judgment is DENIED.

Plaintiff's cross-motion for summary judgment is DENIED.

Dated: 4|18|14

Joyce A. Wheeler
Justice, Superior Court

PA-Brendan Rielly Esq
DA-Christopher Neagle Esq

STATE OF MAINE
CUMBERLAND, ss

EAST SHORE BEACH
CONDOMINIUM
ASSOCIATION,

Plaintiff

v.

STEVEN R. EDDLESTON
and DANIEL MOSELEY,

Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-473
NM -CVR- 5/20/2013

30 MAY '13 AM8:19

ORDER ON MOTION
TO DISMISS

Before the court is the defendants' motion to dismiss pursuant to M.R. Civ. P. 12(b)(6). For the following reasons, the motion is denied.

The defendants have attached to their motion thirteen exhibits, including affidavits, deeds, parts of the plaintiff's by-laws, parts of the plaintiff's declaration of condominium, amendment to the declaration, a meeting agenda, meeting minutes, correspondence, and emails. In general, only the facts alleged in the complaint are considered on a motion to dismiss. Moody v. State Lottery Comm'n, 2004 ME 20, ¶ 8, 843 A.2d 43. If the court considers materials outside the pleadings, the motion is treated as a motion for summary judgment. Id. The court may, however, consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, without converting a motion to dismiss into a motion for summary judgment when the authenticity of such documents is not challenged." Id. ¶ 10, citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st

1

Cir. 2001). The court treats this motion as one pursuant to Rule 12(b)(6)[1] but will consider the certificate of amendment to the declaration of the East Shore Beach Condominiums, attached to the complaint as exhibit A, the documents referred to in the complaint, and the by-laws submitted by the plaintiff with its memorandum.

Viewing the allegations in the complaint in the light most favorable to the plaintiff, the complaint "sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." In re Wage Payment Litig., 2000 ME 162, ¶ 3, 759 A.2d 217; see 33 M.R.S. §§ 1602-117(d) (2012); 33 M.R.S. 1603-102(a)(4), (15)-(17) (2012); By-laws, Art. II(A), II(K)(4), (14)-(16); Declaration, Art. 8(a), 12(a)(ii), (c)[2]; Certificate of Amendment.

The entry is

The Defendant's' Motion to Dismiss is DENIED.

Date: May 29, 2013

Nancy Mills
Justice, Superior Court

30 MAY '13 AM8:18

---

[1] If the defendants intended that the court consider thirteen exhibits, a motion for summary judgment should have been filed, along with a supporting statement of material facts. See M.R. Civ. P. 56(h)(1). The procedure provided by Rule 56 significantly aids the court's determination of the existence of disputed material facts and application of law to those facts. See M.R. Civ. P. 56(h)(1)-(4).

[2] The court relies on the plaintiff's description of article 12(c) of the declaration. This part of the declaration is not attached to the Eddleston affidavit. (Pl.'s Mem. at 7.)

2

--------------------------------------------------------------------------------

01 0000001074         NEAGLE, CHRISTOPHER S
   511 CONGRESS ST PO BOX 9711 PORTLAND ME 04104-5011

| | | | | |
|---|---|---|---|---|
| F | STEVEN R EDDLESTON | DEF | RTND | 12/14/2012 |
| F | DANIEL MOSELEY | DEF | RTND | 12/14/2012 |

02 0000008401         RIELLY, BRENDAN
   10 FREE STREET PO BOX 4510 PORTLAND ME 04112

| | | | | |
|---|---|---|---|---|
| F | EAST SHORE BEACH CONDOMINIUM ASSOCIATION PL | | RTND | 11/16/2012 |